## DUNCAN *against* ALT and wife.

### IN ERROR.

Testator devised a tract of land to his son, charged with the payment of twenty-two hundred pounds, he to pay seventeen hundred pounds of that sum, to himself the testator, to his wife, and to his children "he had with his first wife," "in manner as shall hereafter be said." Fifty pounds to the testator on the first of April, eighteen hundred and sixteen, twenty-five pounds on the first of April, eighteen hundred and seventeen, "and then so on until after my decease." He directs that his son should pay the residue of the seventeen hundred pounds, which should remain after his decease, thirty pounds to his wife, and one hundred and twenty pounds to his children by his first wife, of whom there were ten, on the first day of April, in each year after his death, "till the seventeen hundred pounds is fully paid." He then added, "for the five hundred pounds after the seventeen hundred pounds are paid, if my said wife is then alive, and my widow, my said son shall pay yearly the interest of the five hundred pounds to my said wife." He directed that his son should pay the interest on the five hundred pounds, until after the decease or marriage of his wife, ("after the seventeen hundred pounds is paid as aforesaid.") He directed that after the death or marriage of his wife, his son should pay the five hundred pounds, to his children by his second wife, in three annual payments, and added, ("But this I mention the five hundred pounds shall not be paid, nor no interest thereon until after the seventeen hundred pounds is paid.") The testator directed that his personal estate should be sold, and he bequeathed one third, after paying his debts, to his wife, and two thirds to his children, by his first wife. He also devised to his wife a life estate in sixteen acres of land. After the death of the testator, the land devised to the son was sold at sheriff's sale, on a judgment in favour of one of the legatees, for twenty-one hundred dollars, a sum less than sufficient to pay all the legacies. *Held*: that all the legacies, those to the children of the first, and those to the children of the second marriage, abated in proportion. The direction for priority of payment, is insufficient to raise a presumption, that a preference was intended in point of right.

A pecuniary legacy may be exempt from abatement, as in the case of a wife or child destitute of other provision, or of a legacy given in lieu of a dower, or of a preference manifestly intended. But these cases are exceptions to the general rule, that equality is the highest equity, dependent on peculiar circumstances, and attended with strong expressions of intention.

ERROR to the Court of Common Pleas of *York* county.

This was a case stated in nature of a special verdict, in which the following facts were agreed on:

*Andrew Lau* made, and published his will and died. In that will, which is dated on the twenty-first of March, eighteen hundred and sixteen, and was admitted to probate, on the twenty-fifth of February, eighteen hundred and twenty-two, he directs his personal estate to be sold, and after paying his debts, bequeaths one third to his wife; and two thirds to be equally divided amongst his children, "he had with his first wife," ten in number, naming them, of whom *Elizabeth*, the plaintiff, is one. The testator then goes on and devises as follows:

"I give and bequeath unto my eldest son, *Michael*, my dwelling plantation, to his heirs and assigns for ever, that is, one hundred

and fifty acres, and allowance I allow to him, and the overplus thereof, I keep for myself, on the south side; for which one hundred and fifty acres, he my said son *Michael* shall pay, and give out the full sum of twenty-two hundred pounds lawful money, that is to say, my son *Michael* shall pay seventeen hundred pounds of the aforesaid sum to me, and to my wife, and to my said children, in manner as shall hereafter be said. Fifty pounds he is to pay to me, on the first of April, eighteen hundred and sixteen, then on the first of April, eighteen hundred and seventeen, twenty-five pounds again, and then so on until after my decease. On the first day of April, after my decease, my son shall pay one hundred and fifty pounds in such manner: thirty pounds to my wife, and the one hundred pounds is to be divided to and amongst my ten children by my first wife, in equal shares, to them in the meaning aforesaid: and then so on, yearly on every year, on the first day of April, thirty pounds to my said wife, if she remains my widow, and one hundred and twenty pounds to my children, in manner aforesaid, till the seventeen hundred pounds is fully paid. But in case my wife should die else marry before the said seventeen hundred pounds shall be paid, if she marries again, she shall have the thirty pounds no more, after her marriage or death the yearly payments of one hundred and fifty pounds is to be divided to and amongst my said children in the meaning aforesaid: now I order for the five hundred pounds, after the seventeen hundred pounds is paid, if my said wife is then alive, and my widow, my said son *Michael* shall pay yearly the interest of the five hundred pounds to my said wife. The said five hundred pounds shall lay on the land to my son so long as my wife shall not marry or else die. After her decease, my said son shall pay on the interest of the said five hundred pounds until after her death or marriage as aforesaid, (after the seventeen hundred pounds is paid as aforesaid.) Then after her marriage or decease, my son *Michael* shall pay the said sum of five hundred dolpounds, to my other children which I have by present wife *Magdalena,* in manner as shall hereafter be said, in three equal shares or payments; the first payment on the first of April, after her decease, and so on yearly, until the five hundred pounds is fully paid to my children, which I have by my second wife *Magdalena.* (But this I mention, the five hundred pounds shall not be paid, nor no interest thereon, until after the said seventeen hundred pounds is paid.) The said five hundred pounds is to be divided in equal shares alike to and amongst my other children, which I had by my second wife.''

By a codicil to the above will, dated the seventeenth of November, eighteen hundred and twenty-one, the testator bequeathed another plantation, containing sixteen acres, to his wife *Magdalena,* during her life, or so long as she remained his widow, ''and af-

ter her death, or marriage, the same to be sold, and the proceeds of sale, to be equally divided amongst all" his "children." And he also devised to his son *Michael,* in fee, "the overplus of the plantation, willed to him as above, lying on the south side of the one hundred and fifty acres."

In the District Court of *York* county, the defendants in error, *Philip Alt* and *Elizabeth* his wife, who were plaintiffs below, brought an action of debt for the purpose of recovering the proportion of *Elizabeth* his wife, the testator's daughter, by his first wife, in the sum charged on the one hundred and fifty acres of land devised to *Michael,* against the executors of *Andrew Lau,* with notice to the *terre tenant.* Judgment was rendered in this action, on the fourteenth of April, eighteen hundred and thirty-one, and under it a levy was made of the land devised to *Michael,* which was sold by *Andrew Duncan,* Esq. sheriff of *York* county, for two thousand one hundred dollars; against whom as defendant this amicable action was entered. And the questions submitted were:

1. Is the seventeen hundred pounds to be paid out of the proceeds of sale, in preference to the five hundred pounds in the will mentioned? If so judgment for the plaintiff for two hundred and forty dollars."

2. "Are the seventeen hundred pounds, and the five hundred pounds, to be paid out of the proceeds of sale, *pro rata?* If so judgment for the plaintiff for two hundred dollars.

The court of Common Pleas gave judgment for the plaintiffs, for two hundred and forty dollars, and *Duncan,* the defendant brought the case by writ of error to this court.

The cause was argued by

*Gardner* for the plaintiff in error. He refered to *Witman* v. *Norton,* 6 *Bin.* 395. *Nichols* v. *Postlethwaite,* 2 *Dall.* 131. *Tucker* v. *Hessenclever, et al.,* 3 *Yeates,* 294. *Barnet* v. *Washebaugh,* 16 *Serg. & Rawle,* 413. *Otty* v. *Shuey's executors,* 1 *Rawle* 294. *Burridge* v. *Bradyl,* 1 *Peer. Wil.* 127. *McLanahan* v. *McLanahan,* 2 *Penns. Rep.* 281.

*Lewis* for the defendant in error.

The opinion of the court was delivered by

GIBSON, C. J.—A pecuniary legacy, may undoubedly be exempt from abatement, as in the case of a wife or child destitute of other provision, or of a legacy given in lieu of a dower, or of a preference manifestly intended. But these cases are few in number, dependent on peculiar circumstances, and attended with strong expressions of intention. They are, in fact, exceptions to the general rule that equality is the highest equity, which a Chancellor is eager to enforce, wherever it is not controlled by countervailing equi-

ties, or by an intent too manifest to be disregarded. The interest of the widow, which is frequently an obstacle to the enforcement of it, is not involved here. Ample provision was made for her, by the bequest of a third of the personal estate, a devise of land for life, or during widowhood, and an annuity charged on the fund in question, which could not however be affected by contribution among the children, the inquiry being not whether the annuity shall abate with the rest, but whether the other legacies shall be brought into average. Putting her interest out of view, then, what is there peculiar in the case? Both the land and the person of the devisee, are charged with the twenty-two hundred pounds, which is directed to be paid *out*. Out of what? Undoubtedly the land devised to the son, who is thus made a purchaser of the shares of the other children. By a codicil made a few years afterwards, the testator gave to the devisee, over again, the residue after deducting that sum, which is entirely indicative of an intent, that till satisfaction made, the shares of all the children should remain in the land. But the five hundred pounds, part of the gross sum, are expressly charged; and if the seventeen hundred pounds are not charged likewise, the consequence to the children of the first wife must be postponement instead of preference. Now having charged the land and the person of the devisee too, it is unreasonable to suppose the testator ever anticipated. the unparalleled depreciation of real estate, that occurred in a few years from the date of his will, or dreamt that any part of these legacies would not be paid. Even so late as eighteen hundred and twenty-one, we find from the codicil already mentioned, that he supposed the land to be more than sufficient. There is nothing, then, to indicate an actual intent to prefer a particular class of them, except what is urged by the plaintiff as sufficient evidence of it, a direction that the five hundred pounds shall not be distributed among the children of the second wife, till the seventeen hundred pounds are paid to the widow and the children of the first. But though this direction is given with an appearance of emphasis, it could not, as already said, have been suggested by an apprehension of deficiency, nor consequently with a view to provide for such an event. A motive distinct from any presumption of an intended priority of right, may be found in the fact that the children of the first marriage, were more advanced in years and therefore more immediately in need of their patrimony to establish them in business or a profession. Nor is there any thing more solid in the exemption of the five hundred pounds from interest, before the expiration of the time limited for the preceding payments. An obvious reason for that is, the interest was intended to make up the widow's annuity after the seventeen hundred pounds should be exhausted, before which, it would not be wanted. What weight then is due to the naked direction for priority of payment? In regard to that; the rule

(Duncan *v.* Alt & wife.)

of the court is laid down by *Lord Hardwicke,* in clear and satisfactory terms. "It is said there are cases," he remarked, "wherein the court has gone a great way, to level legatees, and make them abate in proportion, as in *Brown* v. *Allen.* I do not remember the state of that case, and there may be a difference in the state of it; for if the testator say *"imprimis,"* or "in the first place I give such a legacy," that amounts only to the order in which he expresses his gifts in the will—to nothing more. But if he had said "to be paid in the first place," *and it had been in that case a* PROVISION FOR A WIFE, I should have doubted of that determination, and should have been inclined to think it was a declaration of his intent that the provision for his wife should come out of the personal estate, and be paid in the first place, because there is ground for that from the preference to a wife and children UNPROVIDED FOR. *If indeed in that will,* THEY ALL STOOD IN EQUAL DEGREE, *it was a sufficient ground for the court* NOT *to presume a preference:* but it was a provision for a wife or child unprovided, that is different." *Lewin* v. *Lewin,* 2 *Ves*. 415. The case of *Brown* v. *Allen* which was the subject of these remarks, is reported in *Vern.* 31, but briefly and unsatisfactorily, *Lord Nottingham* being represented to have said in a few words, that "where a man devises several legacies, as one hundred pounds to one, and fifty to another, &c. there though he directs the legacy of one hundred pounds to be paid in the first place, yet if the other legacies fell short, the legatee of the one hundred pounds must make a proportionate abatement of his legacy:" in other words that a naked direction of the sort gives priority of time, but not priority of right, as has since been determined in *Blower* v. *Morret,* 2 *Ves.* 429. Then to try the matter by the rule of *Lord Hardwicke,* as just stated, the interest of the widow being out of the case, and the children who claim a preference being provided for, while all stand in an equal degree of consanguinity to the testator, the direction for priorty of payment, is insufficient to raise a presumption that a preference was intended in point of right. The plaintiff and the other children of the first marriage have had a monopoly of the personal estate along with the widow; and if they are to come in for a preference, as regards this fund, the children of the second marriage will have been left absolutely destitute—a consequence which the testator could never have intended. Had they even stood in equality of provision, the legacies must have abated in proportion; but as the inequality observable in the case, is prejudical to them in respect of the other parts of the estate, it strengthens their claim to an equality of participation in this. They ought, therefore, to have been let in on equal terms.

Judgment reversed and judgment for the plaintiff for two hundred dollars.